IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GERARD SZUBIELSKI,                    :
                                      :
              Petitioner,             :
                                      :
       v.                             :     Civil Action No. 15-974-RGA
                                      :
DAVID PIERCE, Warden, and             :
ATTORNEY GENERAL OF THE               :
STATE OF DELAWARE,                    :
                                      :
              Respondents.            :

---

## MEMORANDUM OPINION

Gerard Szubielski. *Pro se* Petitioner.

Maria T. Knoll, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

December ____, 2016
Wilmington, Delaware



ANDREWS, UNITED STATES DISTRICT JUDGE:

Presently pending before the Court is Petitioner Gerard Szubielski's Application for a

Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition"). (D.I. 3) The State filed an

Answer in opposition, contending that the Petition should be dismissed in its entirety. (D.I. 13)

For the reasons discussed, the Court will dismiss the Petition.

## I. BACKGROUND

> On May 25, 2006, Officer Simpkins attempted to pull [Petitioner's] vehicle over because
> it matched the description of a car reportedly used in another crime. [Petitioner] initially
> stopped after the officer activated her emergency equipment, but then drove away.
> Officer Simpkins testified that she chased [Petitioner] from Route 40 to Route 1, at
> speeds in excess of 65 mph. [Petitioner] lost control of his vehicle causing him to speed
> into a construction site. Ron Cirillo, a flagger for the construction site, sustained serious
> injuries as a result of [Petitioner's] car crashing into a dump truck and then striking him.

*Szubielski v. State*, 82 A.3d 730 (Table), 2013 WL 6211807, at \*1 (Del. Nov. 26, 2013).

Petitioner was indicted for first degree assault and first degree reckless endangering. (D.I. 13 at

1) Prior to trial, the State *nolle prossed* the reckless endangering charge. (D.I. 13 at 1 n. 2) In

January 2007, a Delaware Superior Court jury convicted Petitioner of first degree assault and the

Superior Court sentenced him as a habitual offender to life in prison. *See Szubielski*, 2013 WL

6211807, at \*1.

Six months after sentencing, Petitioner filed his first motion for post-conviction relief

pursuant to Delaware Superior Court Criminal Rule 61. *See Szubielski v. State*, 36 A.3d 350

(Table), 2012 WL 218950, at \*1 (Del. Jan. 24, 2012). In October 2007, after trial counsel

conceded that he failed to advise Petitioner of his right to appeal, the Superior Court granted the

Rule 61 motion and re-sentenced Petitioner to the same terms and conditions as his original

sentence. *See State v. Szubielski*, 2007 WL 3105080, at \*5 (Del. Super. Ct. Oct. 22, 2007).

Petitioner filed a second Rule 61 motion in 2008. The Superior Court denied the motion as procedurally barred, and the Delaware Supreme Court denied as untimely his appeal of that judgment. *See Szubielski*, 2012 WL 218950, at*1.

In April 2010, Petitioner filed his third Rule 61 motion alleging, *inter alia*, that he never received the October 2007 re-sentencing order. The Superior Court denied the motion, and the Delaware Supreme Court reversed that judgment and remanded the case for appointment of counsel and re-sentencing. *See Szubielski*, 2012 WL 218950, at *2. On remand, the Superior Court re-sentenced Petitioner to life imprisonment, and appointed counsel to represent Petitioner during his appeal. *See Szubielski*, 2013 WL 6211807, at *3. On direct appeal, the Delaware Supreme Court affirmed Petitioner's conviction and sentence. *Id*. at *5.

In December 2013, Petitioner filed his fourth Rule 61 motion, which the Superior Court denied. *See State v. Szubielski*, 2015 WL 545151, at *7 (Del. Super. Ct. Jan. 30, 2015). The Delaware Supreme Court affirmed that judgment. *See Szubielski v. State*, 125 A.3d 676 (Table), 2015 WL 5928054, at *1 (Del. Oct. 8, 2015).

## II.     GOVERNING LEGAL PRINCIPLES

### A.   Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i)  there is an absence of available State corrective process; or
  (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines*, 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting

3

therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States,* 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell,* 547 U.S. 518, 537-38 (2005); *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

## B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's

4

decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).

A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even the state court does not issue an opinion explaining the reasons for its order. As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). The Supreme Court further explained the *Richter* presumption in *Johnson v. Williams*, 133 S.Ct. 1088 (2013). Pursuant to *Johnson*, if a petitioner has presented the claims raised in a federal habeas application to a state court, and the state court opinion addresses some but not all of those claims, the federal habeas court must presume (subject to rebuttal) that the state court adjudicated the unaddressed federal claims on the merits. *Id*. at 1095-96. The consequence of this presumption is that the federal habeas court will then be required to review the previously unaddressed claims under § 2254(d) whereas, in the past, federal habeas courts often assumed "that the state court simply overlooked the federal claim[s] and proceed[ed] to adjudicate the claim[s] de novo." *Id*. at 1091-92.

5

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III.    DISCUSSION

Petitioner's timely-filed § 2254 Petition asserts the following two grounds for relief: (1) the State engaged in prosecutorial misconduct by impermissibly shifting the burden of proof to Petitioner and by making improper remarks that (a) compared his case to that of O.J. Simpson, (b) asked whether it was smart to attempt to evade the police, and (c) mischaracterized  trial counsel's closing argument; and (2) trial counsel provided ineffective assistance by failing to investigate the vehicle's mechanical failure and by failing to object to the State's amendment of the indictment. The Court will address these issues seriatim.

### A.  Claim One: Prosecutorial Misconduct

#### 1.  Shifting burden of proof

In his first sub-argument of Claim One, Petitioner contends that the State engaged in prosecutorial misconduct by impermissibly shifting the burden of proof to the defense by (a) questioning Petitioner on cross-examination as to whether he had his vehicle checked for a malfunction, and (b) arguing in its rebuttal closing statement that Petitioner never corroborated his claim that his vehicle had a malfunction. Since the Delaware Supreme Court denied this

6

argument as meritless on direct appeal, Petitioner will only be entitled to habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

In order for a prosecutorial misconduct claim to warrant federal habeas relief, the prosecutor's comments must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 180 (1986). A prosecutorial misconduct claim must be examined in "light of the record as a whole" in order to determine whether the conduct "had a substantial and injurious effect or influence" on the jury's verdict. *Brecht v. Abramson*, 507 U.S. 619, 638 (1993). Pursuant to Third Circuit precedent, this inquiry involves examining "the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton*, 255 F.3d 95 (3d Cir. 2001). Simply alleging misconduct fails to establish a violation of due process because the focus of the *Darden* inquiry is the unfairness of the trial, not the conduct of the prosecutor. *See Smith v. Phillips*, 455 U.S. 209, 219 (1982).

In the instant case, Petitioner's "defense was that he should not be held responsible because his striking of Mr. Cirillo was an accident due to a mechanical failure in his motor vehicle." *Szubielski*, 2013 WL 6211807, at \*4. Citing *Benson v. State*, 636 A.2d 907 (Del. 1994), the Delaware Supreme Court explained that, "[i]n presenting such a theory, [Petitioner] subjected himself to the prosecutor's permissible questions and argument on the lack of corroboration that there had been a mechanical failure." *Szubielski*, 2013 WL 6211807, at \*4.

7

The Delaware Supreme court did not cite *Darden* and its progeny during its analysis of the instant prosecutorial misconduct claim. Nevertheless, the Court concludes that the Delaware Supreme Court's decision was not contrary to clearly established federal law, because the Delaware case to which it cited referred to the applicable precedent.[2] *See Fahy v. Horn,* 516 F.3d 169, 196 (3d Cir. 2008) (Supreme Court of Pennsylvania's decision was not "contrary to" clearly established federal law because it appropriately relied on its own state court cases, which articulated the proper standard derived from Supreme Court precedent); *Williams,* 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court also concludes that the Delaware Supreme Court's decision involved a reasonable application of *Darden* and its progeny. As a general rule, when a defendant testifies at trial, a prosecutor may attack his credibility to the same extent as any other witness. *See Fitzpatrick v. United States*, 178 U.S. 304, 315 (1900). A defendant who "advances a 'theory of the case,' . . . opens the door to an appropriate response by the prosecution, commenting on the 'quality of his ... witnesses or ... attacking the weak evidentiary foundation on which the defendant's theory of the case rested." *United States v. Roberts*, 119 F.3d 1006, 1015 (1st Cir. 1997); *see also Brown v. Chesney*, 2004 WL 619944, at *13 (E.D. Pa. Mar. 16, 2004). A court evaluating the propriety of prosecutorial remarks should consider if the remarks misstated or

---

[2]In *Benson*, the Delaware Supreme Court explained that the "general rule in Delaware is that the law never imposes upon a defendant the burden or duty of calling any witnesses or producing any evidence," and this "right is protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution and serves as a prohibition to certain prosecutorial conduct in a criminal case." *Benson*, 636 A.2d at 910.

manipulated evidence, and whether they implicated other specific rights of the accused, such as the right to counsel or the right to remain silent. *See Darden*, 477 U.S. at 182.

During direct examination, Petitioner did not contest that he fled from Officer Simpkins, or that he had struck and injured Cirillo with his car. Rather, he claimed that the assault was an accident and that his car had malfunctioned. (D.I. 72-2 at 35-36) On cross-examination, the State asked if Petitioner had made any efforts to corroborate his story that his car experienced mechanical problems while fleeing from police. (D.I. 17-2 at 44-45) Petitioner responded that he had not because he was incarcerated. (D.I. 17-2 at 45) In turn, during closing, defense counsel argued that Petitioner should be acquitted because his striking of Cirillo was an accident:

> If you're persuaded that [Petitioner] told you what actually happened inside his vehicle, liquid in his face, car lights out, accident, well, then there's no criminal liability here and you should find [Petitioner] not guilty.

(D.I. 17-2 at 54) In rebuttal, the State argued: "Did the defense, although having no obligation whatsoever to present a defense, bring anybody in here to corroborate that which the defendant said? Absolutely not. Absolutely not." (D.I. 17-2 at A-56)

Given the nature of Petitioner's testimony, the State had a right to cross-examine Petitioner about any efforts he made to corroborate his story. Similarly, given the nature of Petitioner's testimony and trial counsel's closing argument, the State had a right to comment on the absence of evidence supporting Petitioner's contention that his collision with Mr. Cirillo was a mere accident caused by a vehicle malfunction. The State's rebuttal summation properly argued against Petitioner's defense theory. In addition, the State did not misstate or manipulate the evidence. Thus, for all of these reasons, the Court concludes that the Delaware Supreme Court's denial of the instant argument does not warrant relief under § 2254(d), because the

9

State's cross-examination of Petitioner and its rebuttal argument did not infect the trial with such unfairness as to deprive Petitioner of due process.

### 2. Improper comments

Next, Petitioner asserts that the State engaged in additional prosecutorial misconduct by comparing his case to O.J. Simpson's case, by asking Petitioner if it was smart to attempt to evade the police, and by mischaracterizing trial counsel's closing argument. Although Petitioner presented the instant "improper comments" argument to the Delaware Supreme Court on direct appeal, the Delaware Supreme Court applied Delaware Supreme Court Rule 8 and refused to consider the argument due to Petitioner's failure to object to these remarks during the trial. *See Szubielski*, 2013 WL 6211807, at \*4. By applying the procedural bar of Rule 8, the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-64 (1984) that its decision rested on state law grounds. In turn, Delaware Supreme Court Rule 8 is an independent and adequate state procedural rule precluding federal habeas review. *See Campbell v. Burris*, 515 F.3d 172, 182 (3d Cir. 2008). Thus, the Court cannot review the merits of Petitioner's "improper comments" argument absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the argument is not reviewed.

Petitioner does not allege, and the Court does not see, any cause for his procedural default of the instant portion of Claim One. Petitioner has also failed to demonstrate that his procedural default should be excused under the miscarriage of justice exception to the procedural default doctrine, because he has not provided any new reliable evidence of his actual innocence. These two conclusions provide sufficient justification for the Court to deny as procedurally

10

barred the "improper comments" allegations in Claim One. Nevertheless, for the reasons set

forth below, the Court also explains why Petitioner has failed to demonstrate he will suffer

prejudice as a result of his default.

### a.    Reference to O.J. Simpson

While cross-examining Petitioner, the State made the following reference to O.J.

Simpson:

| | |
|---|---|
| State: | Okay. So how fast were you going right before the turn? |
| Petitioner: | As I made the turn, probably in the thirties. |
| State: | Thirties. You're going – the thirties down Route 40 approaching the traffic light, knowing that the cops are after you, and you're only going 30 miles an hour? |
| Petitioner: | I said 30 as I was making the turn. |
| State: | Are you sure OJ wasn't there on that Route 40?  Was it a high speed chase or a low speed chase?  You were going fast, weren't you? |

*Szubielski*, 2013 WL 6211807, at *3.  On direct appeal, the Delaware Supreme Court held that

the State's isolated "reference to O.J. Simpson was improper," but did not constitute plain error.

*Id.* at *5. In reaching this decision, the Delaware Supreme Court noted that the State did not

"characterize [Petitioner] as O.J. Simpson." *Id.*  The Delaware Supreme Court also distinguished

the two non-precedential cases cited by Petitioner to support his argument, *DeFreitas v. Florida*,

701 S.2d 593 (Fla. Dist. Ct. App. 1997) and *Minnesota v. Thompson*,  578 N.W.2d 734 (Minn.

1998). *Szubielski*, 2013 WL 621107, at *4-*5.  For instance, the Delaware Supreme Court

explained that the prosecutor in *DeFreitas* "directly compared the defendant's behavior and the

11

circumstances to Simpson," and the prosecutor in *Thompson* "repeatedly referred to Simpson during opening and closing arguments." *Id*. at *4.

In this proceeding, Petitioner has failed to demonstrate that the O.J. Simpson remark "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 180. The O.J. Simpson remark, while an "improper isolated reference," as the Delaware Supreme Court described it, *Szubielski*, 2013 WL 6211807, at *5, was just that -- a single statement in the State's lengthy and detailed cross-examination. (D.I. 17-2 at 38-47) Moreover, the State's cursory reference to "OJ" did not portray Petitioner as being similar to O.J. Simpson. Thus, the Court will deny the instant allegation as procedurally barred, because Petitioner has not shown that he will be prejudiced if the Court does not review the merits of the instant allegation.

### b. Asking Petitioner if evading the police was smart

Next, Petitioner contends that the State engaged in misconduct by asking him the following questions during cross-examination:

| State: | And you would agree with me, would you not, that back on May 25th of 2006 when this officer stopped you, right, that it would have been a prudent thing for you to have stopped, correct? |
|---|---|
| Petitioner: | Prudent? |
| State: | A smart move on your part? |
| Petitioner: | Oh, correct, yes. |
| State: | But you weren't too smart that morning, were you? |
| Petitioner: | I made a bad decision. |

12

*Szubielski*, 2013 WL 6211807, at \*5. Petitioner was charged with first degree assault on the premise that he recklessly caused the injury suffered by Cirillo. In order to prove that Petitioner acted recklessly, the State had to show that he was "aware of and consciously disregard[ed] a substantial and unjustifiable risk" that his conduct would "create [] a substantial risk of death to another person." *Id.* at \*5; *see also* Del. Code tit. 11, §§ 231(e), 613(a)(3). Given the State's requirement to establish Petitioner's conscious disregard of risk, the State was permitted to ask Petitioner if he was aware that his conduct was unwise. The remote possibility that the State's explanation of the word "prudent" implied that Petitioner acted foolishly does not render the explanation improper or render the trial unfair. Hence, the Court will deny this completely meritless sub-argument of Claim One as procedurally barred.

### c. Mischaracterizing trial counsel's closing argument

During closing, trial counsel argued that Petitioner was not guilty of first or second degree assault because the State had not demonstrated that he possessed the requisite *mens rea*, asserting: "I'm not going to contend to you that he did not suffer serious physical injury . . . the question in this case is what was [Petitioner's] state mind when this all happened." *Id.* at \*5. In rebuttal, the State asserted: "The defense apparently is arguing to you that there was no substantial risk of death, so therefore, find my client guilty of assault in the second degree." *Id.*

Now, in his final sub-argument of the "improper comments" portion of Claim One, Petitioner contends that the State's improper mischaracterization of trial counsel's closing argument deprived him of a fair trial. However, Petitioner has once again failed to demonstrate that he will suffer prejudice if this contention is not reviewed on the merits. During the trial, Petitioner conceded that he fled from police at a high speed into a construction area late at night,

13

and he did not offer a reason for this behavior. Rather, Petitioner asserted that hitting Cirillo was an "accident" or, at worst, criminally negligent. When viewed in context with Petitioner's testimony, the Court is not persuaded that the State's mischaracterization of defense counsel's argument caused the jury to ignore its role as fact-finder and final decider of witness credibility. In other words, the Court cannot conclude that the State's mischaracterization rendered Petitioner's trial unfair. Therefore, the Court will deny the instant argument as procedurally barred.

## B. Claim Two: Ineffective Assistance of Counsel

In Claim Two, Petitioner contends that trial counsel was ineffective for failing to object to the State's amendment of the indictment and for failing to investigate the vehicle's mechanical failure. The Superior Court denied these arguments as meritless, and the Delaware Supreme Court summarily affirmed that decision. *See Szubielski*, 2013 WL 6211807; *Szubielski*, 2015 WL 545151. Given the Delaware Supreme Court's summary affirmance, the Court will refer to the Superior Court's decision. Consequently, Petitioner will only be entitled to habeas relief if the Superior Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the

14

second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.*.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that the representation was professionally reasonable. *See Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Delaware Superior Court correctly identified the *Strickland* standard applicable to Petitioner's ineffective assistance of counsel allegations. Thus, the Superior Court's decision was not contrary to *Strickland*. *See Williams*, 529 U.S. at 406.

The Court's inquiry is not over, however, because it must also determine if the Superior Court reasonably applied the *Strickland* standard to the facts of Petitioner's case. When performing this inquiry, the Court must review the Superior Court's decision with respect to Petitioner's ineffective assistance of counsel claim through a "doubly deferential" lens. *Richter*, 562 U.S. at 105.

Notably, when § 2254(d) applies, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* When assessing prejudice under *Strickland*, the question

15

is "whether it is reasonably likely the result would have been different" but for counsel's

performance, and the "likelihood of a different result must be substantial, not just conceivable."

*Id.* And finally, when viewing a state court's determination that a *Strickland* claim lacks merit

through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists

could disagree on the correctness of the state court's decision." *Id.* at 101.

## 1. **Trial counsel did not object to the amendment of the indictment**

Petitioner's indictment originally asserted the following:

ASSAULT FIRST DEGREE in violation of Title 11, Section 613 of the Delaware Code
as amended.

[Petitioner], on or about the 25th day of May, 2006, in the County of New Castle, State of
Delaware, did recklessly engage in conduct which created a substantial risk of death to
Ronald Cirillo by running into him with a car, which conduct caused physical injury to
Ronald Cirillo.

*Szubielsk*i, 2015 WL 545151, at \*5. "After [Petitioner] was indicted, the State sought to add the

term 'serious' between 'caused' and 'physical.' On September 25, 2006, more than three months

before the trial (*see* D.I. 16 at 4), trial counsel agreed to the change without objection." *Id.*

In his first allegation of Claim Two, Petitioner contends that trial counsel provided

ineffective assistance by failing to object to the State's addition of the word "serious" to the first

degree assault charge in the indictment. Petitioner presented this argument in his Rule 61

motion. The Superior Court denied the argument as meritless, explaining that

The indictment in this case provided full notice to [Petitioner] of the charge that he was
asked to defend against. Moreover, [Petitioner] has not met his burden of overcoming the
strong presumption that the grand jury faithfully performed its duty in [Petitioner's] case.
As such, Trial Counsel did not commit an error in failing to object to the amendment of
the indictment as it was clear from the beginning what the State would argue.

16

*Szubielski*, 2015 WL 545151, at \*6. The Delaware Supreme Court summarily affirmed this decision. *See Szubielski*, 2015 WL 5928054, at \*1.

Pursuant to Delaware Superior Court Criminal Rule 7(e), a "court may permit an indictment . . . to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." Del. Super. Ct. Crim. R. 7(e). The test for determining the appropriateness of an amendment under the Delaware Constitution focuses on the extent to which the amendment substantively changes the material elements of the crime alleged in the original indictment. *See Coffield v. State*, 794 A.2d 588, 592 (Del. 2002). A Delaware trial court's ability to amend an indictment is limited to matters of form, and in "no instance may [a] trial court authorize an amendment to an indictment if that amendment would in any way alter the substance of the grand jury's charge." *Id*. at 591. However, the Delaware Supreme Court "has held that an indictment containing the official citation to the statute and the name of the offense was sufficient information to put a defendant on notice of the crime with which he was charged even though an element of the crime was omitted from the indictment." *Maddox v. State*, 977 A.2d 898 (Table), 2009 WL 2323490, at \*2 (Del. July 30, 2009).

In this case, the count in Petitioner's indictment charging first degree assault cited to Del. Code tit. 11, § 613. Each subsection of § 613 requires "serious physical injury." When viewed in this context, Petitioner's original indictment put him on notice that he was charged with causing serious physical injury to Cirillo. The amendment was one of form in order to ensure that the text of the indictment mirrored the cited statute, and did not alter the crime charged or place into question whether Petitioner's alleged behavior could have suggested a different

17

probable cause determination to the grand jury. *See Coffield*, 794 A.2d at 592. Since the

amendment was proper, trial counsel did not perform deficiently by failing to object to it.

Therefore, the Court concludes that the Superior Court reasonably applied *Strickland* in denying

this portion of Claim Two.

### 2. **Trial counsel did not investigate the car's mechanical problems**

In his second allegation of Claim Two, Petitioner contends that trial counsel provided

ineffective assistance by failing to investigate the vehicle's mechanical failure. During

Petitioner's Rule 61 proceeding, the Superior Court denied this argument for the following

reasons:

> In the [Rule 61] Affidavit, Trial Counsel states that early in the representation [Petitioner]
> suggested that the vehicle may have malfunctioned, but that [Petitioner] never repeated
> that possibility in the subsequent conversations and correspondence. Instead, [Petitioner]
> urged Trial Counsel to present a defense that his girlfriend, Margareta Martinez, who was
> a passenger in the vehicle, was the one who was in fact driving the car. Attached to the
> affidavit, Trial Counsel provided copies for the Court, of the correspondence with
> [Petitioner], which confirms that [Petitioner] urged Trial Counsel to present the defense
> that Ms. Martinez was driving the vehicle.

> [Petitioner] urged Trial Counsel to present that defense even after Trial Counsel met with
> Ms. Martinez, who indicated that she could not support the version of events that she was
> driving the vehicle in question on the night of May 25, 2006. Only after the State
> completed its case-in-chief did [Petitioner] present Trial Counsel with a letter stating a
> new version of the collision which alleged malfunction of the vehicle.

> Based on the communication between [Petitioner] and Trial Counsel, the Court finds that
> Trial Counsel acted reasonably. The correspondence between [Petitioner] and Trial
> Counsel reveals that only after the State completed its case-in-chief did [Petitioner] urge
> Trial Counsel to pursue a defense of vehicle malfunction. Because until then [Petitioner]
> insisted to Trial Counsel that he was not the driver of the vehicle, it was reasonable for
> Trial Counsel to make no investigation into the vehicle's condition.

*Szubielski*, 2015 WL 545151, at \*6.

Here, since Petitioner has not provided any clear and convincing evidence to the contrary, the Court accepts as correct the Superior Court's factual determination that Petitioner did not seek to raise the issue of a mechanical vehicular malfunction to trial counsel until the State had completed its case-in-chief. Additionally, after considering the late timing of Petitioner's changed defense theory in conjunction with his prior insistence that he was not driving the car at the time of the accident, the Court concludes that the Superior Court reasonably applied *Strickland* in denying Petitioner's argument that trial counsel provided ineffective assistance by failing to investigate the mechanical condition of the car. Accordingly, the Court will deny the instant ineffective assistance allegation for failing to satisfy § 2254(d).

## IV. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that Petitioner's habeas claims do not warrant relief. In the Court's view, reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court declines to issue a certificate of appealability.

## V. CONCLUSION

For the reasons discussed, the Court concludes that the Petition must be denied. An appropriate Order will be entered.

19